<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| BARCLAYS SERVICES, LLC., <br><br> Petitioner, <br><br> v. <br><br> PAULINA ADEMUWAGUN, <br><br> Respondent. | No. 23cv20798 (EP) (AME) <br><br> **OPINION** |

This action arises out of an employment dispute between Petitioner Barclays Services, LLC ("Barclays") and Respondent Paulina Ademuwagun ("Ademuwagun"). Ademuwagun commenced an action in the Superior Court of New Jersey, Essex County, asserting statutory actions against Barclays, including race discrimination under the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. 10:5-1, *et seq.* ("State Court Action"). Barclays argues Ademuwagun's employment agreement includes a mandatory arbitration clause ("Arbitration Agreement") requiring her to arbitrate before an arbitrator at the Financial Industry Regulatory Authority ("FINRA") or, if FINRA declines, at the American Arbitration Association ("AAA"). D.E. 3-1 at 7 ("Br."). Barclays moves to compel arbitration and stay the State Court Action. D.E. 3 ("Motion" or "Mot."). Ademuwagun opposes and denies ever signing the Arbitration Agreement at issue. D.E. 9 ("Opp'n"). Barclays replies. D.E. 11 ("Reply"). For the below reasons, the Court will **DENY** the Motion *without prejudice* to permit limited discovery on the narrow issue of whether an arbitration agreement exists.[1]

---

[1] The Court has reviewed the parties' submissions and decides the motion without oral argument. *See* Fed. R. Civ. P. 78(b); L.Civ.R. 78.1(b).

I.     BACKGROUND

   A. Barclays' Facts[2]

According to Barclays, on June 22, 2022, Barclays created an applicant profile for Ademuwagun, a new hire, in its online applicant tracking system, Taleo. Br. at 10. Her name, personal e-mail address, and resume were entered into the Taleo system. *Id.* Taleo then notified Ademuwagun to create a password. *Id.* Taleo's system records indicate that on June 26, 2022, Ademuwagun logged into her Taleo account and inputted certain information into her profile. *Id.*

Barclays notes that it first issued an offer letter to Ademuwagun on or about June 22, 2022 at 3:17 PM ET.[3] *Id.*; Reply at 14 (citing KKR Decl., Ex. 2). It was rescinded about eleven minutes later. Reply at 14 (citing KKR Decl., Ex. 2). Barclays then released a second version of that letter[4] at 3:32 PM ET. *Id.* The Second Offer Letter was rescinded while Ademuwagun's employment was negotiated. *Id.* On June 29, 2022, Barclays released a new version[5] to Ademuwagun. *Id.* Barclays states that the Third Offer Letter contained an error in the legal entity named and was rescinded for correction. *Id.*

Barclays contends that on June 30, 2022, it released a final employment offer letter[6] to Ademuwagun through Taleo. Br. at 8; Reply at 15. On July 1, 2022, Ademuwagun logged into Taleo using her password. Br. at 8. The Final Offer Letter contained a drop-down menu to record user responses. *Id.* Barclays avers that Ademuwagun clicked on the menu to designate her

---

[2] Barclays' moving brief incorporates by reference its Verified Petition ("Petition"), Declaration of Jeremy M. Brown, Esq. ("Brown Decl."), Declaration of Kavitha K. R ("KKR Decl."), and Declaration of Oliver Hoad ("Hoad Decl."). Its facts also derive from the Declaration of Sarada Srinivas ("Srinivas Decl.") and the Reply Declaration of Oliver Hoad ("Hoad Reply Decl.").
[3] Referred to hereinafter as Initial Offer Letter.
[4] Referred to hereinafter as Second Offer Letter.
[5] Referred to hereinafter as Third Offer Letter.
[6] Referred to hereinafter as Final Offer Letter.

response as "Accept the offer," typed her last name in the field labeled "E-Signature" and clicked "Submit" at 4:00 PM GMT. *Id.* at 8, 11. This functioned as an agreement to the offer, as Taleo automatically created an electronically signed copy of the Final Offer Letter by stamping Ademuwagun's name, date, and time of acceptance into the system. *Id.* at 8-9. The Final Offer Letter contains an arbitration clause stating in part:

> YOU AND THE COMPANY MUTUALLY AGREE THAT ANY DISPUTE OR CONTROVERSY ARISING UNDER OR ANY WAY RELATED TO YOUR EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, ANY DISPUTE REGARDING YOUR COMPENSATION OR THE TERMINATION OF YOUR EMPLOYMENT, SHALL BE SETTLED ON AN INDIVIDUAL BASIS BY ARBITRATION BEFORE THE FINANCIAL INDUSTRY REGULATORY AUTHORITY ("FINRA"). YOU AND THE COMPANY AGREE TO WAIVE ANY RESPECTIVE RIGHTS TO PROCEED ON SUCH CLAIMS IN COURT OR TO HAVE A JURY TRIAL.

KKR Decl., Ex. 3 at 41. The Final Offer Letter further provides that the FAA will govern the Arbitration Agreement. *Id.* at 43. It also includes an integration provision which states that the letter "supersedes all proposals and prior agreements, oral or written." *Id*. Ademuwagun began her employment at Barclays on August 15, 2022 and was terminated on June 14, 2023. Br. at 12. She commenced her State Court Action on July 11, 2023. *Id.*

Barclays also avers that after signing the Final Offer Letter, Ademuwagun then "electronically signed or completed the: (1) Confidentiality and Intellectual Property Agreement, (2) SEC Questionnaire, (3) Political Contribution Certification, (4) Regulatory Employment Questionnaire, (5) Personal Data Collection Form, (6) Compliance Form, and (7) 401(k) Disclosure Form, among others." Reply at 13. (citing KKR Decl. ¶ 47 and Ex. 4 (list of assigned and completed onboarding tasks in Taleo); Hoad Reply Decl. ¶ 20 and Ex. 10 (copy of electronically signed Confidentiality and Intellectual Property Agreement)).

3

B. Ademuwagun's Facts[7]

Ademuwagun tells a different story. She maintains that she "never received or reviewed the June 30, 2022 Offer letter; [] never signed or accepted an offer letter containing an arbitration agreement, including a June 30, 2022 offer letter; and [] would not have accepted any offer letter or document that contained an arbitration agreement." Opp'n at 10. Ademuwagun states that Oliver Hoad, the Barclays recruiter who managed her recruitment process, emailed her on June 28, 2022 stating "[p]lease let me summarise the offer you have now seen come through formally in our system." Ademuwagun Cert. ¶¶ 12-13. That e-mail had a Role Profile Attestation ("RPA") attached to it, detailing her role, as well as a Benefit Enrollment Guide. *Id.* ¶¶ 14-16. She notes neither of those attachments had arbitration clauses. *Id.*

Ademuwagun states that she accepted an offer on June 28, 2022, but does not specify how.[8] Ademuwagun Cert. ¶ 17. She further says that she communicated with Hoad "to inform him that I accepted the second (and final) Offer Letter" on June 29, 2022. *Id.* ¶ 18. In the WhatsApp exchange that both parties annex, Hoad writes on July 5, 2022: "Just wanted to make sure you'd seen the new offer letter and that everything made sense? Did you click accept in the system yet." *Id.* ¶ 21; Brown Decl., Ex. 8 at 64. Ademuwagun replies "I did..I have accepted the offer. . . " *Id.* However, Ademuwagun maintains that when she replied to Hoad, she was referring

---

[7] Ademuwagun's brief references her Certification ("Ademuwagun Cert.") and the Certification of Kevin Barber ("Barber Cert.").
[8] It is therefore unclear if Ademuwagun concedes this is the Second Offer Letter Barclays maintains was uploaded in Taleo on June 22, 2022 and/or whether she acknowledges electronically *signing* it. KKR Decl., Ex. 2; Reply at 16. On the one hand, she acknowledges the offer she believes she accepted was "created in Barclays' Taleo system as of June 28, 2022." Ademuwagun Cert. ¶ 17. Her attorney also represented that she "agreed to and electronically accepted an Offer Letter" reflecting the terms of an offer on June 28, 2022. Brown Decl., Ex. 9 at 68. However, she also states that Hoad "sent [her] via email the second (and final) offer to inform [her] that the Offer Letter was in the system." Ademuwagun Cert. ¶ 10. It is plausible, therefore, that she interprets the e-mail from Hoad was the offer.

to "the second (and final) Offer Letter that was accepted on June 28, 2022." Ademuwagun Cert. ¶ 22. Barclays attests that no offer letter was accepted on its Taleo system on June 28, 2022. Srinivas Decl. ¶ 20.

Ademuwagun also contests the Final Offer Letter because Barclays' protocol purportedly requires collection of an employee's IP address to enter into an employment agreement. Barber Cert. ¶ 13. She has requested versions of the Final Offer Letter with the IP address of the signee, which Barclays has not provided. *Id.* ¶ 14. Barclays replies that it does not collect IP addresses under its protocol when a U.S.-based candidate accepts an offer letter in Taleo. Reply at 13 (citing Srinivas Decl. ¶¶ 10-13).

In sum, Barclays maintains that Ademuwagun electronically signed the Final Offer Letter on Taleo that contains an ironclad Arbitration Agreement. Br. at 8. Ademuwagun unequivocally states that she never signed that letter nor has seen it and maintains that she accepted an alternative offer on June 28, 2022, though it is unclear exactly which offer that refers to and the manner of purported acceptance. Ademuwagun Cert. ¶ 17.

## II. ANALYSIS

### A. This Court has Subject Matter Jurisdiction

Barclays is a Delaware corporation with its principal place of business in New York, Br. at 13, and Ademuwagun is a citizen of Texas. Opp'n at 12 n.1. Barclays avers that the amount in controversy exceeds $75,000. Br. at 13.

While the parties agree that the FAA does not create an independent basis[9] for federal jurisdiction, they dispute whether diversity jurisdiction exists. Ademuwagun argues in a footnote

---

[9] *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 249-50 (3d Cir. 2016) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 25 n.32 (1983)).

that this Court lacks subject matter jurisdiction because defendants named in the State Court Action—and unnamed in this action—are necessary and indispensable parties. Opp'n at 12 n.1. Barclays replies that the operative issue before the Court, the enforceability of the Arbitration Agreement, does not render the state court defendants indispensable. Reply at 9. The Court agrees with Barclays.

Federal Rule of Civil Procedure 19 governs compulsory joinder. First, courts must determine whether parties are "necessary" under Rule 19(a). *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007). *Id.* Rule 19(a) states:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

If either of these subsections is satisfied, "the absent party is a necessary party that should be joined if possible." *Koppers Co., Inc. v. Aetna Cas. and Sur. Co.*, 158 F.3d 170, 175 (3d Cir. 1998). Where joinder of a necessary party would destroy jurisdiction, courts determine whether the party is indispensable. *Gen. Refractories*, 500 F.3d at 313 ("[A] holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule 19(b) that it must dismiss a case because joinder is not feasible (i.e., will defeat diversity) and the party is indispensable to the just resolution of the controversy.").

The only State Court Action defendant who could theoretically destroy diversity is Elizabeth Ragozzino, a New York citizen, who Ademuwagun alleges discriminated against her.

Opp'n at 12 n.1. Ragozzino is not a party to the employment agreement between Barclays and Ademuwagun, nor is she a party to the Petition before this Court. *See JPMorgan Chase & Co. v. Custer*, No. 15-6288, 2016 WL 927339, at *2 (D.N.J. Mar. 10, 2016); *see also Doctor's Assocs. v. Distajo*, 66 F.3d 438, 445 (2d Cir. 1995) ("The 'parties' to which § 4 of the FAA refers are the parties to the petition to compel."). There is no showing that her absence in this case would impact adjudication of the enforceability of the Arbitration Agreement. Fed. R. Civ. P. 19(a). Nor is there a showing that Ragozzino claimed an interest in the federal action "and any prejudice to the parties arising from piecemeal litigation is overcome due to the FAA's strong bias favoring arbitration, as the Supreme Court has ruled that the FAA requires courts to enforce arbitration agreements 'notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement.'" *Custer*, 2016 WL 927339, at *2 (citing *Moses H. Cone*, 460 U.S. at 20). Whether arbitration is mandatory turns on the narrow question of whether Ademuwagun signed the Arbitration Agreement. This Court finds that Ragozzino, as solely a party to the underlying action, is not necessary. The Court need not conduct an indispensability inquiry given the prerequisite of Fed. R. Civ. P. 19(a) was not met. Accordingly, subject matter jurisdiction is proper under 28 U.S.C. § 1332.

### B. *Younger* Abstention is Improper

Ademuwagun also argues that this Court should abstain from exercising jurisdiction pursuant to the *Younger* doctrine because of the pending State Court Action. Opp'n at 12 (citing *Younger v. Harris*, 401 U.S. 37 (1971)). Circumstances appropriate for *Younger* abstention are "exceptional" and include (1) state criminal prosecutions, (2) civil enforcement proceedings, and (3) "civil proceedings involving certain orders that are uniquely in furtherance of the states courts'

ability to perform their judicial functions." *Sprint Comms., Inc. v. Jacobs*, 571 U.S. 69, 73 (2013) (cleaned up).

Ademuwagun argues that the presence of the following *Middlesex* factors warrants abstention: "(1) there are pending or ongoing state judicial proceedings; (2) the state proceedings implicate important state interests; and (3) the state proceedings afford an adequate opportunity to raise any constitutional issues." Opp'n at 13 (citing *O'Neill v. City of Philadelphia*, 32 F.3d 785, 789 (3d Cir. 1994); *Middlesex Cty. Ethics. Comm. v. Garden State Bar Ass'n*, 457 U.S. 423 (1982)). In Reply, Barclays correctly notes that the *Middlesex* factors are not dispositive. Reply at 7; *Sprint*, 571 U.S. at 81 (clarifying that the hearing in *Middlesex* was "akin to a criminal proceeding" and the three conditions utilized in that case were "*additional* factors appropriately considered by the federal court before invoking *Younger*.") (emphasis in original). Rather, the Supreme Court explained, and the Third Circuit "ha[s] stressed several times since—that the three *Middlesex* conditions are no longer the test for *Younger* abstention. Instead, *Younger* applies to only" the three categories in *Sprint* outlined above. *Malhan v. Sec'y U.S. Dep't of State*, 938 F.3d 453, 462 (3d Cir. 2019) (cleaned up); *see also Borowski v. Kean Univ.*, 68 F.4th 844, 849 (3d Cir. 2023) ("for a quasi-criminal civil enforcement proceeding to warrant abstention under *Younger*, it must satisfy three supplemental conditions [under *Middlesex*].").

The State Court Action does not fall into any of the exceptional *Younger* categories warranting abstention. First, it is not a criminal prosecution. Second, it is not a civil enforcement proceeding that is "akin to a criminal prosecution in important respects." *ACRA Turf Club, LLC v. Zanzuccki*, 748 F.3d 127, 137 (3d Cir. 2014) (cleaned up). Lastly, the third *Younger* category—which addresses potential federal court decisions that would result in "unprecedented intrusion into the [state] judicial system"—does not apply. *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 10

8

(1987). The State Court Action "does not challenge any judicial order at all" and makes abstention under this exception "plainly inappropriate." *Malhan*, 938 F.3d at 463 (cleaned up).

Abstention would also be inappropriate because it "would deny Petitioner access to the forum that it and Respondent selected in the Agreement to resolve their disputes, should the Court find that there is a valid agreement to arbitrate." *Custer*, 2016 WL 927339, at *3 (citing *Olde Discount Corp. v. Tupman*, 1 F.3d 202, 213 (3d Cir. 1993)). "The mere existence of a concurrent parallel action in state court does not usurp the Congressional intent that parties who have agreed to arbitrate their differences be, under the FAA, ushered *post haste* into the appropriate arbitral forum." *Great W. Mortg. Corp. v. Peacock*, 1996 U.S. Dist. LEXIS 10041, at *8 (D.N.J. Apr. 9, 1996) (citing *Moses H. Cone*, 460 U.S. at 22). Should it be determined that the Arbitration Agreement is enforceable, the Court has every interest in ensuring the parties to the agreement move quickly into arbitration. Accordingly, the Court will not abstain from deciding this case.

### C. The Court Must Order Limited Discovery on Two Narrow Issues[10]

The parties do not dispute the existence of the Final Offer Letter or that it contains an Arbitration Agreement. *See* Br. at 8; Opp'n at 8-9. Rather, Ademuwagun "firmly denied from the outset -- and continues to deny -- that she ever signed a June 30, 2022 offer letter or agreed to arbitration." Opp'n at 19.

---

[10] Although the parties dispute the enforceability of the Arbitration Agreement, it is plainly governed by the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, *et seq. See* KKR Decl., Ex. 3 at 43 ("For the avoidance of doubt, the Federal Arbitration Act shall govern the interpretation, enforcement and all proceedings under the arbitration provisions."). The FAA provides that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction" is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

When it is apparent on the face of the Complaint and/or documents relied upon in the complaint that claims are "subject to an enforceable arbitration clause," a motion to compel arbitration is analyzed under a Rule 12(b)(6) standard. *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 776 (3d Cir. 2013) (cleaned up). "The Rule 56 standard is appropriate where: (1) 'the motion to compel arbitration does not have as its predicate a complaint with the requisite clarity' to establish on its face that the parties agreed to arbitrate,' or (2) 'the opposing party has come forth with reliable evidence that is more than a 'naked assertion ... that it did not intend to be bound' by the arbitration agreement, even though on the face of the pleadings it appears that it did.'" *Kozur v. F/V Atlantic Bounty, LLC*, No. 18-8750, 2019 WL 5208997, at *3 (D.N.J. Oct. 16, 2019) (citing *Guidotti*, 716 F.3d at 774).

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Prong two is clearly satisfied. If the Arbitration Agreement is enforceable, its scope clearly extends to the parties' dispute. *See* KKR Decl., Ex. 3 at 37 ("YOU AND THE COMPANY MUTUALLY AGREE THAT ANY DISPUTE OR CONTROVERSY ARISING UNDER OR ANY WAY RELATED TO YOUR EMPLOYMENT, INCLUDING, BUT NOT LIMITED TO, **ANY DISPUTE REGARDING YOUR COMPENSATION OR THE TERMINATION OF YOUR EMPLOYMENT**, SHALL BE SETTLED ON AN INDIVIDUAL BASIS BY ARBITRATION[.]") (emphasis added).

The problem is with prong one. To determine if there is an arbitration agreement, courts look to "state law principles regarding formation of contracts." *Corchado v. Foulke Mgmt. Corp.*, No. 15-6600, 2017 WL 627427, at *3 (D.N.J. Feb. 15, 2017) (citing *First Options of Chi., Inc. v.*

*Kaplan*, 514 U.S. 938, 944 (1995)). "An agreement to arbitrate, like any other contract, must be the product of mutual assent, as determined under customary principles of contract law." *Id.* (quoting *Atalese v. U.S. Legal Servs. Grp., L.P.*, 99 A.3d 306, 312-13 (N.J. 2014)). As a result, "arbitration agreements may be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability." *Id.* (cleaned up) (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010)).

Here, Ademuwagun unequivocally denies ever signing the Arbitration Agreement. Opp'n at 19. Without clarifying what employment agreement she accepted, or how she accepted it, Ademuwagun states that she "accepted the second (and final) Offer Letter which has been created in Barclays' Taleo system as of June 28, 2022." Ademuwagun Cert. ¶ 17. Barclays states that Ademuwagun electronically signed the Final Offer Letter (released through Taleo on June 30, 2022) on July 1, 2022. Reply at 11. The Court cannot rule on enforceability of the Arbitration Agreement without clarity on these issues. When, as here, an agreement to arbitrate has been put in issue, courts can order limited discovery and entertain a renewed motion to compel arbitration after. *Guidotti*, 716 F.3d at 776. Accordingly, the Court must order limited discovery on (1) what agreement Ademuwagun maintains she accepted and (2) whether she electronically signed the Final Offer Letter.[11]

### III.   CONCLUSION

For the reasons above, the Court will **DENY** Petitioner's Motion ***without prejudice.*** The parties are to engage in limited discovery on the narrow issue of whether an agreement to arbitrate exists. Petitioner may re-file its Motion following the completion of discovery. An appropriate Order accompanies this Opinion.

---

[11] The Court expects expedited discovery given the narrowness of outstanding issues.

Dated: June 3, 2024

_____
Evelyn Padin, U.S.D.J.