<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BARCLAYS SERVICES, LLC,<br><br>Petitioner,<br><br>v.<br><br>PAULINA ADEMUWAGUN,<br><br>Respondent. | 23cv20798 (EP) (AME)<br><br>**OPINION** |

**PADIN, District Judge.**

This matter comes before the Court by way of Petitioner Barclays Services, LLC's ("Barclays" or "Petitioner") renewed motion to compel arbitration of Respondent Paulina Ademuwagun's ("Ademuwagun") employment discrimination claims, D.E. 36 ("Renewed Motion" or "Renewed Mot."), which Ademuwagun seeks to litigate before the Superior Court of New Jersey, D.E. 1 ("Petition") ¶ 8. Ademuwagun opposes the Renewed Motion, D.E. 44 ("Renewed Opp'n"), and Barclays replies, D.E. 46 ("Renewed Reply"). The Court has reviewed the parties' submissions and all relevant items on the docket and decides the Renewed Motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons stated below, the Court will **GRANT** Barclays' Renewed Motion.

**I.    BACKGROUND**

    **A.    Procedural Background**

On July 11, 2023, Ademuwagun commenced an action against Barclays in the Superior Court of New Jersey, Essex County, where she brought various employment claims. Petition ¶ 8. Later, on September 29, 2023, Barclays moved this Court to compel arbitration and to stay the state court proceedings, Docket Number ESX-L-004412-23 pending in the Superior Court of New

Jersey, Essex County, Law Division (the "State Court Action"), after Ademuwagun repeatedly refused to arbitrate her employment related claims. D.Es. 1, 3. After the parties completed briefing, this Court found that the disputes Ademuwagun raised fell within the scope of the arbitration agreement that Barclays alleged Ademuwagun agreed to. D.E. 14 ("Previous Opinion") at 10. The Court, however, did not compel arbitration because at that time, it remained unclear whether there was, in fact, an agreement to arbitrate between the parties. *Id.* Therefore, the Court ordered the parties to engage in limited discovery regarding whether there was an agreement to arbitrate. *Id.*

Limited discovery ended on November 8, 2024. *See* D.E. 27. Ademuwagun then requested additional discovery seeking documents related to an engineer's extraction of her IP address, communications between this engineer and a Barclays representative, and depositions of the engineer and of the Barclays representative. D.Es. 28, 30. The Honorable André M. Espinosa, U.S.M.J., denied Ademuwagun's request for additional discovery, D.E. 31, and denied Ademuwagun's subsequent motion for reconsideration, D.E. 43. While Ademuwagun's motion for reconsideration was pending, Barclays filed its Renewed Motion. Judge Espinosa then denied Ademuwagun's motion for reconsideration. D.E. 43.

B.　**Factual Background**

Ademuwagun joined Barclays in 2022 after being referred to Barclays by her husband. D.E. 44; D.E. 37-1 ("Ademuwagun Dep.") at 77:19-78:10. Before beginning employment there, Ademuwagun completed onboarding materials through Barclays' recruitment and onboarding portal ("Taleo"). D.E. 44-16 ("Srinivas Decl.") ¶ 7.

Taleo is a software product that handles recruiting and onboarding for Barclays. D.E. 38 ("Second Kavitha Decl.") ¶¶ 5-9.[1] Prospective employees of Barclays access their recruitment and onboarding materials through the Taleo platform. D.E. 3-5 ("First Kavitha Decl.") ¶¶ 37-38; Second Kavitha Decl. ¶ 5. To access Taleo, users must make an account using a username and private password. First Kavitha Decl. ¶¶ 37-38; Second Kavitha Decl. ¶ 5. When a Taleo user completes a task, Taleo records the time and date of the action and the name of the user. Second Kavitha Decl. ¶ 5.

Through Taleo, Barclays provides offer letters generated from a standard template. D.E. 44-6 ("Kavitha Dep.") at 23:23-24:25. Barclays sent Ademuwagun two offer letters generated from its standard template.[2] D.E. 38-1 (showing internal Taleo logs of offer letters related Ademuwagun); *see* Second Kavitha Decl. ¶¶ 17-22. Barclays sent Ademuwagun the first offer letter on June 22, 2022. D.E. 39 ¶¶ 9-13. However, because Ademuwagun initially applied to Barclays with a shortened last name of "Ade," Barclays' first offer letter (the "'Ade' Offer Letter") reflected the wrong last name. *Id.*; *see* D.E. 39-6; Second Ademuwagun Cert. ¶ 12. Barclays documents show that it internally noted that Ademuwagun's name was "Ademuwagun," not "Ade" on June 27, 2022. *See* Second Ademuwagun Cert. ¶¶ 16, 19-20 (citing D.Es. 44-7 & 44-8). A Barclays recruiting employee, Oliver Hoad, then emailed other recruiting and onboarding staff on June 29, 2022 to generate a new offer letter that reflected Ademuwagun's properly spelled name. D.E. 11-5; *see* D.E. 39-7 at 2. Barclays then generated an updated offer letter with the correct last name on June 30, 2022, Second Kavitha Decl. ¶ 23 (citing D.E. 38-1).

---

[1] In its Renewed Motion, Barclays incorporates the filings submitted with its initial Motion to Compel Arbitration, D.E. 3, and Reply, D.E. 11. Ademuwagun also relies and resubmits filings submitted with her initial opposition. *See, e.g.*, D.E. 44-5 ("First Ademuwagun Cert.") (resubmitting D.E. 9-1). Accordingly, the Court references these filings in its analysis as well.

[2] Barclays generated multiple offer letters for Ademuwagun but sent her only two. *Id.* at 26:4-25.

Throughout this process, Oliver Hoad handled Ademuwagun's employment related questions and concerns. D.E. 9-2 ("Barber Cert.") ¶ 11. On June 28, 2022, Oliver Hoad summarized the offer letter on Taleo for Ademuwagun. D.E. 44-9. Oliver Hoad's email summary did not reference an arbitration agreement. *Id.* His summary email referenced a bonus that would be subject to Barclays' performance expectations for Ademuwagun, Ademuwagun's base location, and her tentative start date. *Id.*; D.E. 44-2 ("Second Ademuwagun Cert.") ¶ 25. Oliver Hoad requested Barclays' recruitment team change Ademuwagun's last name from "Ade" to her full last name on June 29, 2022. D.E. 11-5. Two days later on June 30, 2022, Barclays sent Ademuwagun a second offer letter (the "Final Offer Letter") with her correct name. D.E. 3-5 ("First Kavitha Decl.") ¶ 40.

Completion of Barclays' onboarding documents, which included signing the offer letter, required Ademuwagun to sign into Taleo using a secure password. Second Kavitha Decl. ¶ 5. Ademuwagun could not have started her employment with Barclays without signing an offer letter. Srinivas Decl. ¶ 7. According to data Barclays collected, Ademuwagun signed the Final Offer Letter at 4:00 PM Eastern Time on July 1, 2022, and completed the rest of her onboarding documents within an hour. D.E. 38-1; D.E. 37-9. Barclays software also captured Ademuwagun's IP address when she signed the Final Offer Letter, which matches an IP address that belongs to Ademuwagun.[3] D.E. 38-9; D.E. 9-5 (Ex. 10).

---

[3] The Honorable Judge Espinosa determined that the parties agree that the captured IP address belongs to Ademuwagun. *See* D.E. 31; D.E. 43.

4

## II.     LEGAL STANDARD

### A.     Formation of a Contract

To determine whether a valid agreement to arbitrate exists, courts look to state contract law. *Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313 (3d Cir. 2019). Under New Jersey law,[4] "[a] party who assents to a contract . . . is bound by all the terms of a contract, even those terms that the party did not read or specifically discuss." *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 290 (3d Cir. 2017). Absent fraud or misconduct in the creation or presentation of the contract, the party that signed an arbitration agreement is bound by it. *Stelluti v. Casapenn Enters., LLC*, 203 N.J. 286, 305 (2010).

### B.     Compelling Arbitration

The Federal Arbitration Act ("FAA") "enables judicial enforcement of a contract to arbitrate after the court hears the parties" and "is satisfied that the making of the agreement to arbitrate . . . is not in issue . . . ." *Young v. Experian Info. Sols., Inc.*, 119 F.4th 314, 318 (3d Cir. 2024). Courts in the Third Circuit are also authorized to enjoin pending state court actions when the injunction "is necessary to aid the court's exercise of its jurisdiction over the petition to compel arbitration." *See, e.g.*, *JP Morgan Chase & Co. v. Custer*, No. 15-6288, 2016 WL 927339, at *7 (D.N.J. Mar. 10, 2016) (citing 28 U.S.C. § 2283); *see also Specialty Bakeries, Inc. v. HalRob, Inc.*, 129 F.3d 726, 727 (3d Cir. 1997) (finding that 28 U.S.C. § 2283 did not preclude

---

[4] Here, the parties do not dispute that New Jersey law applies. Both parties here rely on New Jersey state court cases. *See* Renewed Mot. at 21; Renewed Opp'n at 11-12. It appearing that the parties do not dispute that New Jersey law applies, the Court applies New Jersey substantive law. *See Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 533 (3d Cir. 2009) (applying Pennsylvania substantive law in part because the parties relied on Pennsylvania state law).

district court from enjoining a pending state court action to give effect to the parties' arbitration agreement).

Before ordering arbitration, however, a court must conduct a two-step inquiry: "(1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). When a renewed motion to compel arbitration follows discovery regarding arbitrability, courts resolve the motion by applying the same standard applied to motions for summary judgment under Federal Rule of Civil Procedure 56(a). *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 774 (3d Cir. 2013).

Under the summary judgment standard, the movant bears the initial burden of demonstrating that the nonmovant cannot establish one or more elements of its case. *Id.* at 772-73. The movant must support its position by citing to the record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]" Fed. R. Civ. P. 56(c)(1)(A). Once the movant meets its burden, the burden then shifts to the nonmovant to counter with specific facts showing that there is a genuine issue for trial. *Guidotti*, 716 F.3d at 772-73 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)); *Big Apple BMW, Inc. v. BMW of North America, Inc.*, 974 F.2d 1358, 1362 (3d Cir. 1992). The Court must then view the evidence in the light most favorable to the non-moving party to determine whether a genuine dispute of fact exists. *Dee v. Borough of Dunmore*, 549 F.3d 225, 229 (3d Cir. 2008).

The Third Circuit, however, has cautioned that when "conclusory, self-serving affidavits" are incompatible with record evidence, they "are insufficient to withstand a motion for summary

6

judgment." *Gonzalez v. Secretary of Dept. of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) (quoting *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009). The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). For example, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). A party must do more than raise "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Applying this guidance, courts in the Third Circuit regularly grant summary judgment when a self-serving affidavit is "impeached by a well-supported showing to the contrary." *Peronance v. City of Philadelphia*, No. 23-3943, 2024 WL 1660543, at *10 (E.D. Pa. Apr. 16, 2024) (collecting cases).

## III. ANALYSIS

In its previous Opinion, the Court found that Ademuwagun's claims fell within the scope of the arbitration agreement at issue.[5] *See* D.E. 14. The only issue to resolve now is whether the parties did, in fact, agree to arbitrate.

### A. Ademuwagun Executed an Arbitration Agreement

Barclays presents an executed arbitration agreement with Ademuwagun's electronic signature timestamped on July 1, 2022. D.E. 37-9. An executed arbitration agreement ordinarily

---

[5] The Court also found it had subject matter jurisdiction, and that *Younger* abstention did not apply in this case's circumstances. D.E. 14 at 5-9.

7

answers whether an agreement to arbitrate exists. *See Aliments Krispy Kernels*, 851 F.3d at 290 ("A party who assents to a contract, however, is bound by all the terms of a contract . . . ."). Here, however, Ademuwagun submits a sworn certification attempting to dispute Barclay's version of events. *See generally* First Ademuwagun Cert.; Second Ademuwagun Cert.

But there are problems with Ademuwagun's certification. Ademuwagun has been unable to identify any evidence in support of her sworn certification despite completing discovery. Ademuwagun Dep. 36:22-37:1-17. Barclays, however, provides overwhelming objective documentary evidence—much of it contemporaneously recorded—that "blatantly contradicts" Ademuwagun's certification. *Scott*, 550 U.S. at 380.

For example, Ademuwagun's certification states that she did not sign and would not have signed any arbitration agreement. Second Ademuwagun Cert. ¶ 38. Instead, she states that she signed a different offer letter on a different date. Second Ademuwagun Cert. ¶¶ 24-27. Ademuwagun's sworn certification is contradicted by the objective record that shows (1) the only signed offer letter that exists was executed on July 1, 2022, not on June 28, 2022; (2) Ademuwagun, and only Ademuwagun, could have executed the Final Offer Letter on July 1, 2022; and (3) even if Ademuwagun had signed an offer letter on June 28, 2022, the only other offer letter available (i.e., the "Ade" Offer Letter) still contained an agreement to arbitrate.[6]

> 1. *No offer letter was executed on June 28, 2022 but an offer letter was executed on July 1, 2022*

The record demonstrates that after Barclays sent Ademuwagun the "Ade" Offer Letter on June 22, 2022, Barclays updated Ademuwagun's last name in its system and released the Final

---

[6] Further, even if Ademuwagun signed an offer letter that contained no arbitration agreement, her execution of the Final Offer Letter—which contained a merger clause— would have superseded any prior agreement. D.E. 38-10. Therefore, Ademuwagun's employment discrimination claims would *still* be subject to arbitration.

8

Offer Letter (with the correct last name) to Ademuwagun on June 30, 2022, and Ademuwagun then signed the Final Offer Letter on July 1, 2022.

Ademuwagun testified that she signed an offer letter through Taleo on June 28, 2022, Ademuwagun Dep. 36:14-25, but there is no evidence that this June 28, 2022 offer letter ever existed. Ademuwagun Dep. 36:22-37:1-17. In contrast, Barclays has produced a record of every offer letter generated for Ademuwagun. Second Kavitha Decl. ¶ 14 (citing D.E. 38-1). The only offer letter available on Taleo before June 30, 2022 was the "Ade" Offer Letter that Barclays generated on June 22, 2022. D.E. 38-1 at 4 (lacking entries showing any available offer letter on Taleo between the "Ade" Offer Letter and the Final Offer Letter).

In addition, the executed Final Offer Letter is timestamped and shows that Ademuwagun electronically signed the Final Offer Letter on July 1, 2022 at 4:00 PM EST. D.E. 37-9 at 10. And an internal Barclays record—generated just ninety-two minutes before Ademuwagun signed the Final Offer Letter on July 1, 2022 at 4:00 PM—shows that Ademuwagun could not have accepted an offer letter on June 28, 2022 because as of 2:28 PM on July 1, 2022, she had yet to accept *any* offer letter on Taleo. Second Kavitha Decl. ¶ 32 (citing D.E. 38-7 in native form); *c.f.* Second Kavitha Decl. ¶ 33 (citing D.E. 38-8 in native form and showing on July 4, 2022, that Ademuwagun signed an offer letter on July 1, 2022).

Taleo records also show that Ademuwagun electronically signed the Final Offer Letter on July 1, 2022 and not on June 28, 2022. D.E. 3-5 at 53 ("The task status has been changed to 'Completed'" by Paulina Ademuwagun on "Jul[y] 1, 2022, 4:00:25 PM"); *id.* at 48 (showing no events from June 22, 2022 until July 1, 2022 at 4:00:25 PM when "[t]he process step 2550 US Form: Your Contract' has been completed"); D.E. 38-1 at 3 (showing Ademuwagun accepted an offer letter on "Jul[y] 1, 2022, 4:00 PM").

9

Nevertheless, Ademuwagun argues that the timing of Oliver Hoad's communications proves the existence of a June 28, 2022 offer letter. Second Ademuwagun Cert. ¶¶ 24-27. While a June 28, 2022 Oliver Hoad email does state "[p]lease let me summarise the offer you have now seen come through formally in our system," *id.* ¶¶ 24-25, the email itself and other Oliver Hoad communications contradict Ademuwagun's recollection that she received and accepted a June 28, 2022 offer letter. Three examples of record evidence that further contradict Ademuwagun's recollection are described below.

*First,* Ademuwagun avers that the purported June 28, 2022 offer letter "expressly promised" her a non-discretionary $250,000 bonus. Second Ademuwagun Cert. ¶ 39. Yet, Oliver Hoad's June 28, 2022 email summary explicitly states that Ademuwagun's bonus was subject to Barclays performance expectations. *Id.* ¶ 25 ("Full year bonus of $250,000 – *subject to performance* and company deferrals" (emphasis added)). Therefore, Ademuwagun's certification that Barclays offered her a non-discretionary bonus is contradicted by the same Oliver Hoad email that Ademuwagun relies on.

*Second*, Oliver Hoad's June 28, 2022 email could not have been reflective of the purported June 28, 2022 offer letter because it did not reflect her updated name. D.E. 39-7 at 10. Ademuwagun agrees in her certification that she did not sign an offer letter that contained the truncated version of her last name "Ade." Second Ademuwagun Cert. ¶¶ 7-8. Yet, Oliver Hoad's June 28, 2022 email summary lists Ademuwagun's last name as "Ade" in the benefits guide it attached. *See, e.g.*, D.E. 39-7 at 10. Once again, the data in Oliver Hoad's email summary is inconsistent with Ademuwagun's purported version of events.

Finally, other Oliver Hoad communications demonstrate that no offer letter with Ademuwagun's correct last name existed as of June 28, 2022. For example, on June 29, 2022,

10

Oliver Hoad emailed the Barclays recruiting and onboarding staff and directed them to fix the June 22, 2022 offer letter that spelled Ademuwagun's last name incorrectly. D.E. 39-7 at 2; *see also* D.E. 11-5 ("[Ademuwagun] is in good shape—she's asked us to resend an offer letter with her full second name (Pauline Ademuwagun) which she will accept."). And on June 30, 2022, Oliver Hoad again emailed the Barclays recruiting and onboarding staff and directed them to release the corrected Final Offer Letter to Ademuwagun. D.E. 39-16 at 2 (asking Barclays recruiting and onboarding to release the corrected offer letter to Ademuwagun on June 30, 2022); *see also* D.E. 39-8 at 2; D.E. 39-9 at 2 ("You would have to re-push this in [T]aleo."). Ademuwagun does not explain or even address these contradictions. These contemporaneous emails contradict Ademuwagun's recollection that an offer letter (other than the "Ade" Offer Letter) was ready on Taleo for Ademuwagun to sign on June 28, 2022.

The record evidence Barclays presents firmly demonstrates that Ademuwagun signed the Final Offer Letter on July 1, 2022 and that she could not have signed a different offer letter on June 28, 2022. No reasonable jury could conclude otherwise.

### 2.    *Only Ademuwagun could have executed the Final Offer Letter*

To have signed an offer letter (such as the Final Offer Letter) on Taleo, a user needed to sign into Taleo, then click on the offer, then click the menu option to signify acceptance, then type a name into the E-signature box, and then click "submit." D.E. 44-13 Ex. J at 2. Ademuwagun has not identified alternate methods of how to sign an offer letter nor does the record support that such an alternate method existed. *See* Second Kavitha Decl. ¶ 5; *id.* ¶¶ 24-25.

Ademuwagun's password for Taleo was unique, private, and unknown to Barclays staff. Second Kavitha Decl. ¶¶ 4-5. Ademuwagun does not disagree, nor does she argue that anyone else had access to her account. Ademuwagun also completed several onboarding tasks within one

11

hour of the timestamp on the executed Final Offer Letter. D.E. 38-1. Ademuwagun does not dispute that she completed those tasks or that she was logged in at the time that the timestamp was captured. Taleo also captured the IP address associated with the electronic signature and found that it was Ademuwagun's own. *Compare* Second Kavitha Decl. ¶¶ 34-35 (explaining that Barclays extracted the electronic signatory's IP address from Taleo (citing D.Es. 38-9 & D.E. 38-10)), *with* D.Es. 9-2 & 9-5 (showing that Ademuwagun's counsel provided Ademuwagun's IP address to Barclays for purposes of a background investigation).[7]

Courts regularly grant motions to compel arbitration where an electronically signed arbitration agreement exists and the petitioner shows that the respondent, and only the respondent, could have signed it. *See, e.g.*, *Ricci v. Sears Holding Corp.*, No. 14-3136, 2015 WL 333312, at *5-6 (D.N.J. Jan. 23, 2015) (finding no genuine issue of material fact because usage of a private password demonstrated that only the respondent could have signed the arbitration agreement); *Gomez v. Rent-A-Center, Inc.*, No. 18-1528, 2018 WL 3377172, at *4 (D.N.J. July 10, 2018) (similar); *Juric v. Dicks Sporting Goods*, No. 20-65, 2020 WL 4450328 at *8-9 (W.D. Pa. Aug 3, 2020) (similar); *see also Bonilla v. Aadecco USA, Inc.*, No. 23-2741, 2024 WL 945310, at *5 (E.D. Pa. Mar. 5, 2024) (finding no genuine issue of material fact because the IP address used to sign the arbitration agreement and the timing of completed onboarding documents showed that only the plaintiff could have signed the arbitration agreement).

The digital paper trail here is dispositive. Ademuwagun—and only Ademuwagun—could have signed the Final Offer Letter. No reasonable jury could conclude otherwise.

---

[7] Ademuwagun now conveniently contends that this IP address is not her own, Renewed Opp'n at 16, after having first represented in November 2023 that it was, D.Es. 9-2 & 9-5. Judge Espinosa, however, already rejected Ademuwagun's belated argument. D.E. 43 at 5-6.

12

                3.      *The offer letter available on Taleo on June 28, 2022 had an arbitration agreement*

Finally, even if Ademuwagun signed an offer letter on June 28, 2022 as she contends, Ademuwagun Dep. 36:14-25, the record demonstrates that the only offer letter she could have signed *still had an arbitration agreement*. As discussed above in Section III.A.1, Barclays shows—and Ademuwagun presents no evidence to dispute—that only the "Ade" Offer Letter and the Final Offer Letter were ever made available to her in Taleo.[8] D.E. 38-1 (showing internal Taleo logs of offer letters related Ademuwagun); *see also* Second Kavitha Decl. ¶¶ 17-22. On June 28, 2022 in particular, the only offer letter available on Taleo was the "Ade" Offer Letter. Second Kavitha Decl. ¶¶ 18-20 (citing D.E. 38-1 "showing Taleo logs of all entries related Ademuwagun.")

The "Ade" Offer Letter, like the Final Offer Letter, contained an agreement to arbitrate. *Id.* at 6.[9] D.E. 38-3 at 4 (disclosing the arbitration agreement contained in the "Ade" Offer Letter); D.E. 38-5 at 4 (disclosing the arbitration agreement in the Final Offer Letter). Therefore, even if Ademuwagun had signed an offer letter on June 28, 2022, it would have been the "Ade" Offer Letter, and her claims would therefore still be subject to mandatory arbitration.

In sum, the record here blatantly contradicts Ademuwagun's certification and clearly shows that she assented to and executed an arbitration agreement. The Court will therefore **GRANT** Barclays' Renewed Motion.

---

[8] Barclays argues that every offer letter it generated contained an arbitration agreement, Renewed Mot. at 27, but does not cite to the record. *See, e.g.*, *id.* (citing nothing); *id.* at 29 (same). Nevertheless, Barclays only released two of the offer letters it generated to Ademuwagun on Taleo and both contained arbitration agreements. D.E. 38-1; D.E. 38-3 at 4; D.E. 38-5 at 4.

[9] The Arbitration Agreement in the "Ade" Offer Letter is nearly identical to the arbitration agreement in the Final Offer Letter. D.E. 38-3 at 6. Ademuwagun does not dispute that this arbitration agreement differs in any meaningful way.

B.     **Staying the Pending State Court Action**

Having determined that there is an agreement to arbitrate between the parties, the Court now analyzes whether it may stay the State Court Action.

The Anti-Injunction Act permits federal courts to enjoin state court proceedings only "(1) when an injunction is expressly authorized by Congress; (2) when an injunction is necessary in aid of the court's jurisdiction; or (3) when an injunction is necessary to protect or effectuate the court's judgments." 28 U.S.C. § 2833. Although the FAA does not expressly authorize a federal court to enjoin pending state court proceedings, a federal court is nevertheless authorized to do so to effectuate the parties' agreement to arbitrate. *Mendez v. Puerto Rican Int'l. Co., Inc.*, 533 F.3d 709, 711 (3d Cir. 2009) ("The purpose of the FAA is to render agreements to arbitrate fully enforceable." (citing 9 U.S.C. § 2)); *Young*, 119 F.4th at 318 (similar).

Here, the State Court Action must be stayed. To permit Ademuwagun to proceed against Barclays in the State Court Action would "eviscerate the arbitration process and make it a 'hollow formality,' with needless expense to all involved." *Specialty Bakeries*, 961 F. Supp. at 830 (quoting *Blumenthal v. Merril Lynch, Pierce, Fenner & Smith, Inc.*, 910 F.2d 1049, 1054 (2d Cir. 1990)); *see also Southland Corp. v. Keating*, 465 U.S. 1, 7 (1984) ("Contracts to arbitrate are not to be avoided by allowing one party to ignore the contract and resort to the courts. Such a course could lead to prolonged litigation, one of the very risks the parties, by contracting for arbitration, sought to eliminate."). The Court will therefore **STAY** the State Court Action.

IV.     CONCLUSION

For the foregoing reasons, the Court will **GRANT** Barclays' Renewed Motion, **COMPEL** arbitration in accordance with the arbitration provision in the Final Offer Letter, and **STAY** the State Court Action.

Dated: August 14, 2025

                                                                Evelyn Padin, U.S.D.J.